## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

PHILADELPHIA INDEMNITY          )
INSURANCE COMPANY,              )
                               )
    Plaintiff,            )
                               )
vs.                            )    CIVIL NO. 17-cv-684
                               )
BEHAVIORAL HEALTH              )
ALTERNATIVES, INC.,            )
                               )
    Defendant,            )
                               )
and                            )
                               )
EARL TIMMERMEIER, Individually )
and as Special Representatives of the )
Estate of GAYLA TIMMERMEIER,   )
Deceased, SHELLY TIMMERMEIER,  )
and RAYMOND TIMMERMEIER,       )
                               )
    Indispensable Defendants.   )

## COMPLAINT

Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC"), by its undersigned attorneys, complains of Defendant, BEHAVIORAL HEALTH ALTERNATIVES, INC. ("BHA"), and Indispensable Defendant, EARL TIMMERMEIER Individually and as Special Representative of the Estate of GAYLA TIMMERMEIER, Deceased, SHELLY TIMMERMEIER, and RAYMOND TIMMERMEIER, (collectively and hereinafter "Underlying Plaintiffs"), as follows:

### NATURE OF ACTION

1.    PIIC brings this action pursuant to 28 U.S.C. § 1332, seeking to partially rescind a policy of liability insurance issued to BHA.  BHA made a material misrepresentation in the

application for the subject insurance policy that renders the Human Services Organization Professional Liability Coverage Part of the policy unenforceable and void *ab initio*.

2.    PIIC is constrained to only seek partial rescission of the PIIC Policy based on the limitations contained in 215 ILCS 5/154.

3.    PIIC alternatively brings this action pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaration respecting its coverage obligations, if any, owed to BHA.  PIIC specifically seeks a declaration that: (1) BHA breached the late notice condition of the subject insurance policy, and (2) the Prior and Pending Litigation Exclusion of the subject insurance policy precludes coverage.

## THE PARTIES, JURISDICTION, AND VENUE

4.    PIIC is a corporation organized and existing under the laws of Pennsylvania with its principle place of business in Pennsylvania.

5.    BHA is a corporation organized and existing under the laws of Illinois with its principle place of business in Illinois.

6.    Upon information and belief, Underlying Plaintiff/Indispensable Defendant GAYLA TIMMERMEIER, Deceased, was a resident of Illinois.

7.    Upon information and belief, Underlying Plaintiff/Indispensable Defendant EARL TIMMERMEIER is a resident of Illinois.

8.    Upon information and belief, Underlying Plaintiff/Indispensable Defendant SHELLY TIMMERMEIER is a resident of Illinois.

9.    Upon information and belief, Underlying Plaintiff/Indispensable Defendant RAYMOND TIMMERMEIER is a resident of Illinois.

10.     Indispensable Defendants are joined as defendants herein as they may be necessary parties and so that they may be bound by a judgment entered in this case.  If Indispensable Defendants agree to be bound by a judgment entered in this action, PIIC will dismiss said Indispensable Defendants from this lawsuit.

11.     PIIC, BHA, and Underlying Plaintiff are residents of different States, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.  Because the parties to this lawsuit are citizens of different States and the amount in controversy exceeds $75,000, this Court has jurisdiction under 28 U.S.C. § 1332.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTUAL BACKGROUND

### A.     BHA'S OPERATIONS

13.     BHA provides clients with comprehensive outpatient mental health services.

14.     In 2013, Belinda Gunning was the Executive Director of BHA.

15.     In 2013, Jamie Scobbie was a Care Manager employed by BHA.

### B.     THE CLIENT'S TREATMENT AT BHA

16.     On August 30, 2013, GAYLA TIMMERMEIER (hereinafter, "the Client") presented with one of her brothers for a face-to-face Mental Health Assessment with Scobbie.

17.      At the August 30, 2013 Mental Health Assessment, Scobbie evaluated the Client's current mental health needs, progress in treatment, and medical necessity for services.

18.     At the August 30, 2013 Mental Health Assessment, Scobbie and the Client scheduled an appointment to meet the following week to develop the Client's treatment plan goals.

19.     On September 5, 2013, Scobbie met with Gunning to discuss the severity of the Client's mental health symptoms exhibited during the August 30, 2013 Mental Health Assessment.  Scobbie and Gunning also discussed the Client's refusal to eat, symptoms of depression, and difficulty communicating.

20.     On September 5, 2013, the Client presented with her sister, SHELLY TIMMERMEIER, for a second face-to-face appointment with Scobbie.

21.     At that September 5, 2013 appointment, Scobbie discussed with the Client the outpatient services provided by BHA.

**C.     THE INCIDENT**

22.     On September 9, 2013, the Client committed suicide at her home.

23.     Shortly after the Client's suicide, the Client's brother, RAY TIMMERMEIER, called Gunning and told her that the Client had committed suicide.  The Client's brother also told Gunning that the Client's family planned to sue.

**D.     BHA'S FAILURE TO REPORT THE INCIDENT IN ITS APPLICATION FOR INSURANCE THROUGH PIIC.**

24.     In or around October 2014 or November 2014, Gunning submitted a Commercial Insurance Application to PIIC on behalf of BHA ("the Application").

25.     One part of the Application was entitled "Mental Health Supplemental Application."

26.     Question 11 of Section III (Risk Assessment) of the Mental Health Supplemental Application asked Gunning, "Have any of the Applicant's client's attempted or committed suicide."

27.     Gunning responded to Question 11 by placing an "x" inside the box next to the answer, "No."

28.     Question 11 of Section III (Risk Assessment) of the Mental Health Supplemental Application also asked Gunning, "If yes, please indicate" in each year in a chart contained within Question 11, the year of the suicide and the number of clients that committed suicide.

29.      Gunning filled in the chart by indicating the number "0" for years 2011, 2012, 2013, and 2014.

30.     Question 7 of Section IV (Professional Liability) of the Mental Health Supplemental Application asked, "Is the Applicant aware of any circumstances which may result in any claim or suit, including request for medical records?"

31.     Gunning responded to Question 7 by placing an "x" inside the box next to the answer, "No."

32.     Question 2 of Section X (Claims Made) of the Mental Health Supplemental Application asked, "With respect to the coverage applied for, upon inquiry of any person qualifying as a Named Insured under the proposed policy, are there any facts, circumstances, or situations which might give rise to a claim under the coverage(s) for which the Applicant is applying?"

33.     Gunning responded to Question 2 by placing an "x" inside the box next to the answer, "No."

34.     Gunning signed the Mental Health Supplemental Application and dated it October 2, 2014.

35.     A second part of the Application was entitled "Claims Made Supplement."

36.     Question 2 of the Claims Made Supplement asked, "With respect to the coverage applied for, upon inquiry of any person qualifying as a Named Insured under the proposed

policy, are there any facts, circumstances, or situations which might give rise to a claim under the coverage(s) for which the Applicant is applying?"

37.    Gunning responded to Question 2 by placing an "x" inside the box next to the answer, "No."

38.    Gunning signed the Claims Made Supplement and dated it November 25, 2014.

## E.    THE PIIC POLICY

39.    Based upon and in reliance on the representations made by Gunning in the Application, PIIC issued a liability policy to BHA under policy number PHPK1264138, effective from December 1, 2014 to December 1, 2015 ("the PIIC Policy").  A copy of the PIIC Policy is attached hereto as Exhibit "A."

40.    The PIIC Policy contains a Human Services Organization Professional Liability Claims-Made Coverage Form, which provides coverage under the following Insuring Agreement contained in Section I (Coverage):

1.    We will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "professional incident" in the course of performing professional services for, or on behalf of, your human services organization to which this insurance applies.  [. . .]
                                    *  *  *
2.    This insurance applies to "damages" only if:

    a.    the "damages" result from a "professional incident" that takes place in the "coverage territory"; and
    b.    the "professional incident did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and
    c.    a claim for "damages" because of the "professional incident" is first made against any insured, in accordance with paragraph 3. below, during the policy period or any Extended Reporting Period we provide under **Section V, Extended Reporting Period**.

3.    A claim by a person or organization seeking "damages" will be deemed to have been made when notice of such claim is received and recorded by an insured or by us, whichever comes first.

All claims arising out of the same "professional incident" will be considered as having been made at the time the first claim is made.

41.     Section VI (Definitions) of the PIIC Policy defines the pertinent quoted terms used in the Insuring Agreement as follows:

**E.**     **"Damages"** means a monetary:

1.     judgment;
2.     award; or
3.     settlement,

But does not include fines, sanctions, penalties, punitive or exemplary damages or the multiple portion of any damages.

\* \* \*

**P.**     **"Professional incident"** means any actual or alleged negligent:

a.     act;
b.     error; or
c.     omission

in the actual rendering of professional services to others, including counseling services, in your capacity as a human services organization. Professional services include the furnishing of food, beverages, medications or appliances in connection therewith.

Any or all "professional incidents" arising from interrelated or series of acts, error or omissions shall be deemed to be one "professional incident" taking place at the time of the earliest "professional incident".

42.     The Declarations of the Human Services Organization Professional Liability Coverage Part of the PIIC Policy initially indicated a Retroactive Date of December 1, 2014.  An endorsement to the PIIC Policy issued by PIIC at the request of BHA, effective December 1, 2014, changes the Retroactive Date of the Human Services Organization Professional Liability Coverage Part of the PIIC Policy to December 1, 1986.

43.     An endorsement to the PIIC Policy (Form PI-PPL-001 HS (05/13)), entitled "Prior and Pending Litigation Exclusion," provides in pertinent part as follows:

This insurance does not apply to and we shall have no obligation or duty to defend you for:

\* \* \*

3.     Any "professional incident," fact, circumstance or situation as of the date set forth below of which you had knowledge and from which you could reasonably expect a claim for damages or a "suit" to arise.

Prior and Pending Litigation Date: <u>12/01/2014</u>

**F.    THE UNDERLYING LAWSUIT**

44.    On September 4, 2015, Underlying Plaintiffs filed a wrongful death lawsuit in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, pending under case number 15-L-1151, against BHA and several other entities who are alleged to have treated the Client. A copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit "B."

45.    The Complaint in the Underlying Lawsuit alleges that the Client's suicide was a direct and proximate result of BHA's failure to adequately assess the Client's condition, to obtain appropriate care for the Client, to keep the Client safe, to ensure that the Client's condition was properly evaluated and managed, and to adequately and timely coordinate transport of the Client to a facility that would provide care to the Client, among other allegations of misconduct.

46.    PIIC has been providing, and continues to provide, a defense to BHA in the Underlying Lawsuit.

**COUNT I - RESCISSION**

47.    PIIC restates and realleges Paragraphs 1 through 46 above as and for Paragraph 47, as if fully set forth herein.

48.    On or about September 9, 2013, the Client's brother called Gunning and put Gunning and BHA on notice that the Client had committed suicide and that the Client's family intended to sue BHA.

49.     When filling out the Application in October 2014 or November 2014, in response to a question about the number of BHA client suicides, Gunning (on behalf of BHA) indicated that none of BHA's clients had committed suicide in 2011, 2012, 2013, or 2014.

50.     When filling out the Application in October 2014 or November 2014, Gunning (on behalf of BHA) represented to PIIC that BHA was not aware of any facts, circumstances, or situations which might give rise to a claim under the PIIC Policy.

51.     PIIC issued the Human Services Organization Professional Liability Coverage Part of the PIIC Policy based upon and in reliance on the representations made by Gunning (on behalf of BHA) in the Application.

52.     Had Gunning disclosed the Client's suicide on the Application, PIIC: (1) would not have issued the Human Services Organization Professional Liability Coverage Part of the PIIC Policy to BHA, (2) would not have agreed to amend the Retroactive Date of the Human Services Organization Professional Liability Coverage Part of the PIIC Policy from December 1, 2014 to December 1, 1986, (3) would have specifically excluded coverage for liability arising from the Client's suicide, and/or (4) would have charged BHA a higher premium for the coverage provided by the Human Services Organization Professional Liability Coverage Part of the PIIC Policy.

53.     BHA's failure to disclose the Client's suicide and/or the call from the Decedent's family member advising BHA of the Client's suicide in the Application is a material misrepresentation because it materially affected the acceptance of the risk and/or the hazard assumed by PIIC.

54.     BHA's material misrepresentations regarding the number of BHA clients that had committed suicide and/or the call from the Client's brother indicating that the Client's family

would be suing BHA, allow PIIC to rescind the Human Services Organization Professional Liability Coverage Part of the PIIC Policy.

WHEREFORE, Philadelphia Indemnity Insurance Company requests this Honorable Court to enter judgment:

(a)  Voiding the Human Services Organization Professional Liability Coverage Part of the PIIC Policy and declaring the Human Services Organization Professional Liability Coverage Part of the PIIC Policy unenforceable *ab initio*;

(b)  Ordering PIIC to return the premiums paid by BHA for the Human Services Organization Professional Liability Coverage Part of the PIIC Policy and all endorsements thereto;

(c)  Ordering BHA to reimburse PIIC for all money paid to counsel to defend BHA in the Underlying Lawsuit; and

(d)  Granting such other and further relief as it deems just and equitable.

## COUNT II – DECLARATORY JUDGMENT (INSURING AGREEMENT)

55.  PIIC restates and realleges Paragraphs 1 through 54 above as and for Paragraph 55, as if fully set forth herein.

56.  In the alternative, PIIC pleads that BHA cannot satisfy the Insuring Agreement of the Human Services Organization Professional Liability Coverage Part of the PIIC Policy in connection with BHA's tender of the Underlying Lawsuit.

57.  The Insuring Agreement of the PIIC Policy provides that the PIIC Policy applies only if a claim for "damages" because of a "professional incident" is "first made against any insured [. . .] during the policy period [. . . .]."

58.  Accordingly, BHA can only satisfy the Insuring Agreement by proving that a claim for "damages" because of a "professional incident" was "first made" against BHA between December 1, 2014 and December 1, 2015.

59.     In 2013, Gunning receive a phone call from the Client's brother advising that the Client had committed suicide and explaining that the Client's family planned to sue BHA.

60.     The 2013 telephone call to Gunning constitutes a claim for "damages" because of a "professional incident."

61.     The Underlying Lawsuit was served on BHA on or about September 2015.

62.     The Underlying Lawsuit constitutes a claim for "damages" because of a "professional incident."

63.     The Insuring Agreement of the PIIC Policy provides that all claims arising out of the same "professional incident" will be considered as having been made at the time the first claim is made.

64.     The 2013 telephone call and the Underlying Lawsuit arise out of the same "professional incident."

65.     Accordingly, the 2013 telephone call and the Underlying Lawsuit are considered as having been made at the time the first claim was made in 2013.

66.     BHA cannot demonstrate that the Underlying Lawsuit is a claim for "damages" because of a "professional incident" that was first made between December 1, 2014 and December 1, 2015.

WHEREFORE, Philadelphia Indemnity Insurance Company requests this Honorable Court to enter judgment:

(a)     Declaring that BHA cannot meet its burden of satisfying the Insuring Agreement of the PIIC Policy;

(b)     Declaring that the PIIC Policy does not provide a duty to defend BHA in the Underlying Lawsuit;

(c)     Declaring that the PIIC Policy does not provide a duty to indemnify BHA in the Underlying Lawsuit; and

(d)      Granting such other and further relief as it deems just and equitable.

## COUNT III – DECLARATORY JUDGMENT (EXCLUSIONS)

67.      PIIC restates and realleges Paragraphs 1 through 66 above as and for Paragraph 67, as if fully set forth herein.

68.      In the alternative, PIIC pleads that the Prior and Pending Litigation Exclusion precludes coverage in connection with BHA's tender of the Underlying Lawsuit.

69.      The Prior and Pending Litigation Exclusion provides that the PIIC Policy does not apply to, and PIIC has no obligation or duty to defend BHA, for any "professional incident," fact, circumstance, or situation as of December 1, 2014 of which BHA had knowledge and from which BHA could reasonably expect a claim for damages or a "suit" to arise.

70.      Prior to December 1, 2014, BHA had knowledge of a "professional incident," fact, circumstance, or situation from which BHA could reasonably expect a claim for damages or a "suit" to arise.

WHEREFORE, Philadelphia Indemnity Insurance Company requests this Honorable Court to enter judgment:

(a)      Declaring that the Prior and Pending Litigation Exclusion of the PIIC Policy applies;

(b)      Declaring that the PIIC Policy does not provide a duty to defend BHA in the Underlying Lawsuit;

(c)      Declaring that the PIIC Policy does not provide a duty to indemnify BHA in the Underlying Lawsuit; and

(d)      Granting such other and further relief as it deems just and equitable.

## JURY DEMAND

Plaintiff, Philadelphia Indemnity Insurance Company, hereby demands a trial by jury.


Dated:  June 30, 2017

Respectfully Submitted,


/s/ James M. Eastham
James M. Eastham
Attorney for Plaintiff
*Philadelphia Indemnity Insurance Company*

James M. Eastham
Mark F. Wolfe
Jeremy S. Macklin
TRAUB LIEBERMAN STRAUS
& SHREWSBERRY LLP
303 W. Madison St., Suite 1200
Chicago, Illinois 60606
(312) 332-3900 (t)
(312) 332-3908 (f)
jeastham@traublieberman.com
mwolfe@traublieberman.com
jmacklin@traublieberman.com